FILED
UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

APR 16 2025

MITCHELL R. ELFERS
CLERK

1  CARL A. WESCOTT
2  8210 E. Via de la Escuela
   Scottsdale, AZ 85258
3  *in propria persona*
   +1 276 773 7377

4
5  **UNITED STATES DISTRICT COURT**
6  **DISTRICT OF NEW MEXICO**
7  **SANTA FE COURTHOUSE**

8
9  CARL A. WESCOTT,                Civil Action No. __CV 25-368__

                 Plaintiff,        **PLAINTIFF'S VERIFIED LEGAL**
10                                  **COMPLAINT FOR BREACH OF**
11 vs.                             **CONTRACT; NEGLIGENCE**

12 EMZINI AFRICA HOLDINGS LIMITED;

13               Defendants.

14 + DOES 1 through 10

15

16     Plaintiff Carl A. Wescott, proceeding *pro se,* and using the assigned legal claims of his WLL

17
18 (Capital Ideas Consulting WLL, Exhibit A), complains of Defendant Emzini Africa Holdings Limited

19 and in support of his complaint, the Plaintiff states as follows.

20

21 **The Parties: Plaintiff and Defendants**

22 1. Carl Wescott is an individual presently residing in Scottsdale, Arizona.

23 2. Capital Ideas Consulting WLL ("Capital Ideas") is the party that is in contract (Exhibit B) with

24
   Emzini Africa Holdings Limited to sell solar energy solutions.  Capital Ideas assigned its related

25
26 legal claims to Carl Wescott (Exhibit A).

                                                                                    1
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

3. To differentiate between Carl Wescott, the Plaintiff with the assigned legal claims of legal person Capital Ideas, and Carl Wescott, the individual, "Carl Wescott" shall refer to the natural person Carl Wescott.

4. Defendant Emzini Africa Holdings Limited ("Emzini") is a South African company that contracted with the Plaintiff. Emzini agreed to the jurisdiction of American courts in the contract.

5. Collectively, the Plaintiff and Emzini are "the Parties."

**Allegations regarding conspiracy between defendants**

6. Upon information and belief, there are nefarious individual Defendants involved in these conspiracies, currently unknown to Plaintiff. They shall emerge with the benefit of legal discovery.

7. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, those as-yet-unknown individuals, as individuals, in addition to acting for himself and on his own behalf individually, as well as for the benefit of his marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

8. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the other Defendants.

9. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of

2

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate, including Emzini).

10. In addition, upon information and belief, there are nefarious corporate, trust, and other entity type Defendants involved in these conspiracies, besides Emzini, currently unknown to Plaintiff. They shall emerge with the benefit of legal discovery.

11. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, any and all such corporate entities, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

12. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

**Jurisdiction and Venue**

13. Emzini is a South African entity, but Emzini agreed to "any jurisdiction/venue" in the United States for any legal process including litigation, in the signed contract (Exhibit B):

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

If the dispute cannot be resolved via in-person meetings, then the wronged party may choose any jurisdiction/venue in South Africa or the United States for arbitration, mediation, or any other legal process, and the other party will cooperate with the chosen jurisdiction/venue.

(section 12, page 3)

14. The Plaintiff is the "wronged party."

15. The Plaintiff chooses this Court as the venue.

16. Thus, this Court is the appropriate venue for adjudication of the parties' issues.

17. This is an action for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for damages greater than US $75,000. Alleged damages are explained in further detail below as they are critical to this Court establishing subject-matter jurisdiction.

**Subject-Matter Jurisdiction – Background and Legal Standards**

18. With damages of $75,000 and the diversity of citizenship of Plaintiff and Defendants, the Plaintiff would qualify for United States District Court under 28 U.S. Code § 1332(a)(1):

DIVERSITY OF CITIZENSHIP; AMOUNT IN CONTROVERSY; COSTS

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
(1) citizens of different States;   *(28 U.S. Code § 1332 (a)(1))*

19. The Plaintiff resides in Arizona and the Defendant is a citizen of a foreign country that has agreed to submit to the jurisdiction of this Court.

20. Thus, the parties have complete diversity of citizenship.

21. The Plaintiff will add the facts, logic, and reasoning supporting the Plaintiff's thinking that his recoverable damages will be greater than US $75,000.

4

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

22. To qualify for federal court under complete diversity of citizenship, the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs (*28 U.S.C. § 1332(a) (2014)*).

23. The determination of the amount in controversy for federal subject matter jurisdiction is an issue decided under federal law.  14AA FEDERAL PRACTICE AND PROCEDURE § 3702 (4th ed. 2014) [hereinafter "FEDERAL PRACTICE"]. See *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961).

24. Federal courts will, however, look to applicable state law to determine the nature of the plaintiff's substantive claim and related damages.  FEDERAL PRACTICE § 3702. See *Horton*, 367 U.S. at 352-353.

25. Numerous courts, including the United States Supreme Court have held that the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or the value of the object that is the subject matter of the suit. FEDERAL PRACTICE § 3702.5. See *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L. Ed. 1067 (1947).

26. The direct pecuniary value of the right is simply an estimate of the total amount in dispute rather than an assessment of liability. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

27. The amount in controversy is determined without considering accrued or accruing interest or the costs associated with the lawsuit. (*28 U.S.C. § 1332(b)*)

28. Courts have held that collateral effects will not be taken into account when calculating the amount in controversy. FEDERAL PRACTICE § 3702.5. See *Healy v. Ratta*, 292 U.S. 263, 267 (1934)

5

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

("the collateral effects of the decree, by virtue of stare decisis, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law."). See also *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.").

29. The amount in controversy may include compensatory damages including general and special damages such as pain and suffering and out of pocket loss. The amount in controversy may also include punitive damages. *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankinship*, 20 F.3d 383, 386-387 (10th Cir. 1994).

30. When there is direct legal authority, by statute or contract, for the recovery of attorneys' fees, then the fee claim may be included in determining the amount in controversy regardless of whether the award of fees is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 155-1156 (9th Cir. 1998).

## Subject-Matter Jurisdiction with the Facts of this Particular Case

31. The Plaintiff plans to get an attorney for this case in the future when the Plaintiff can afford one.

32. The Plaintiff also believes he will be able to retain a contingency attorney for this case.

33. The Plaintiff has talked to several contingency attorneys and each wanted him to develop the record further prior to accepting his case on contingency.

6

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

34. The Plaintiff alleges that he fully performed under the Parties' contract three times, bringing one commercial client that wanted the Emzini solution (Kuvimba Mining), and putting two other worthy fully-documented shovel-ready IPP (Independent Power Producer) projects into Emzini's pipeline.

35. For the first project, Mel Barends of Emzini informed Carl Wescott to expect a commission of about US $407,000.00.   For the second and third IPP projects, the Plaintiff should receive commissions of approximately US $1,200,000.00 and $600,000.00.

36. Thus, Emzini owes the Plaintiff approximately $2,207,000 of base damages for thrice breaching the Parties' contract, and for acts and non-acts of negligence in shirking its duties to its partner.

37. The Plaintiff's expected base damages ($2,207,000.00) exceed the threshold ($75,000) for federal subject-matter jurisdiction.

**Background Facts leading up to Emzini's breaches and acts and non-acts of negligence**

38. The Plaintiff and Mr. Melgraine Barends, the owner of Emzini and the Plaintiff both have had significant careers in real estate.

39. The Plaintiff and Mr. Barends met initially in the contact of a real estate deal in Lesotho.

40. Beginning in March 2024, Mr. Barends had suggested that Carl Wescott sell Emzini solar solutions.

41. In March 2024, Emzini and Carl Wescott signed a contract with the same commercial terms as the updated contract in Exhibit B.

42. In the Emzini model, an investor funds 100% of the costs for a solar install in exchange for a 25-year power purchase agreement – the investor gets the power payments.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

43. In February 2025, the Parties signed a new contract (Exhibit B) with the same commercial terms / commission, that would also allow the Plaintiff to hire salespeople under him.

44. At this point, the Plaintiff has invested at least two hundred hours of time in selling alternative energy projects with 100% investor funding (the Emzini model) and has delivered three customers that wanted to move forward, that Mr. Barends said Emzini would fund.

**First of three Emzini deals (not including pipeline) – Jena Gold Mine, 7 MW, $10 million system**

45. In February 2025, Mr. Samson Punzisani Jena Gold Mine and the Kuvimba Gold Mines approached Carl Wescott via WhatsApp about a 7 MW solar energy plant at Jena, budgeted at US $10 million:

**KUVIMBA Group Gold Funding**
Lezz Leslie, Sam, You

Sam P Finance Director Of Jena/Kuvimba
Hi Carl. Many thanks.
Our intention is to bring down power costs (power from the national electricity power supplier (ZE...

Sam, I know a company in South Africa that will just provide the equipment you need at zero cost, as they have an investor that pays for it.    9:21 AM

So you don't need to put out US $10 mil of CapEx.    9:22 AM

You just pay for power used from the system over time, which is how the investor is repaid.    9:22 AM

It's my understanding that power in Zim is pretty expensive, so your power bills will go down immediately and significantly.    9:22 AM

So, no investment on the part of Kuvimba for equipment, install... the company handles all maintenance and hassles... and once installed you instantly save money.    9:23 AM

9:24 AM

Mr. Sam, if you'd like to talk to the CEO of that company - his name is Mr. Mel Barends - I'll give you his cell phone number and vice versa.    9:26 AM

Sam P Finance Director Of Jena/Kuvimba
Thanks Carl.
That's exactly what I am looking for.    9:33 AM

You
Mr. Sam, if you'd like to talk to the CEO of that company - his name is Mr. Mel Barends - I'll give you his cell phone number and vice versa.
Sure. Please do. I would be very grateful. Thanks.    9:34 AM

44. As Mr. Punzisani says above in the WhatsApp chat, "That's exactly what I'm looking for."

8

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

45. The Plaintiff subsequently set up a meeting with Mel Barends of Emzini and Mr. Samson, which happened on February 20th, 2025.

46. The Parties agreed to move forward – not a difficult decision for Jena Gold Mines, given that Emzini's investor is paying for their solar energy installation.

48. Jena also gets reliable power, less expensive power, redundancy, and a lower carbon footprint.

49. Later on February 20th, Mr. Mel Barends sent a WhatsApp message to the Plaintiff telling him that he would be paid 2.8 million Rand in a grid-tied system, and 7.5 million Rand, currently US $407,011.45, if Jena Mines needs a system with batteries:

> So on a deal like this let's say if it's grid tied only in the day solar you will receive an estimated R2.8 million excluding vat          8:25 AM
>
> If they go for batteries you will earn at least R7,5 million    8:26 AM
>
> You will earn $ 402 000    8:26 AM
>
> In dollar terms    8:26 AM

50. Jena Mines needs a full system with batteries for reliable 24/7 power.

51. And thus, per Mr. Mel Barends, the owner of Emzini, the Plaintiff is owed (will earn) at least the 7.5 million Rand ($407,011.45).

**Second of three Emzini sales – Mr. Ahmadi/Tanesco, first system of 20 MW, ~$20 million**

52. In March 2025, the Plaintiff obtained a shovel-ready IPP (Independent Power Producer) deal with 20 Megawatts of power on land already obtained, with all permits, where the buyer of power was TANESCO, the Tanzania Electric Supply Company (TANESCO), a government-owned public utility, one that obviously would make its payments.

9

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

53. Mel Barends said it would work for Emzini's model and provided the information to his investor and told the Parties that he would be able to move forward within a week.

54. Emzini's investor funds every Thursday.

## Third of three Emzini sales – Mr. Kaporo/Tanesco, 10 MW, ~$10 million system

55. In March 2025, the Plaintiff obtained a shovel-ready IPP (Independent Power Producer) deal with 10 Megawatts of power from Tangulf Nakatuta Energy Company Limited, the Nakatuta Small Hydropower Power Plant.

56. Mel Barends said it would work for Emzini's model and provided the information to his investor and told the Parties that he would be able to move forward within a week.

## Emzini then refuses to communicate further

57. On or around March 20th, 2025, the Plaintiff checked in with Mel Barends of Emzini, since it had been more than a week already, wanting to close the two sales in Tanzania.

58. Having the temerity to ask about US $30 million of deals closing apparently upset Mr. Mel Barends, who messaged the Plaintiff:

Carl this is honestly waste of my time    7:42 PM

I don't have the time for drama    7:42 PM

Let's just drop the whole thing and move on    7:43 PM

59. Mel Barends then immediately stopped communicating with the Plaintiff, and has not responded to calls, emails or any other communication since then (including through his employee Jameson and his wife Nelini).

10

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

60. Mel Barends may have severe emotional problems or may be mentally ill, but the Plaintiff suspects that the real reason Mr. Barends did this because Emzini moved on to close the three deals, to screw the Plaintiff out of those three commissions.

61. Discovery will reveal what has actually happened.

**Breaches of contract**

62. The contract (Exhibit B) implies that Mel Barends and Emzini should move forward and close the deals with customers brought by the Plaintiff.

63. Indeed, they have a duty to the Plaintiff to do so as the contract is structured as a partnership where the Parties split profits.

64. For any sales that the Plaintiff brought Emzini, Emzini owes the commission as per the contract.

65. Not paying the commission is a breach of the contract.

66. The Plaintiff alleges that Mr. Barends and Emzini refusing to communicate with the Plaintiff after March 20th, 2025 is a repudiation of the Parties' contract.

**Alternate theories including alternate damages**

67. Discovery will show what the facts are, and what the intentions of Mr. Mel Barends were and are with Emzini.

68. As stated above, the Plaintiff asserts that Mr. Barends refusing to communicate any more after March 20th, 2025 is a repudiation of the Parties' contract.

69. If Mel Barends and Emzini never intended to close any sales with customers brought by the Plaintiff, then at the very least, Emzini should pay the Plaintiff for the wasted value of his time under *quantum meruit*.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

70. The Plaintiff has invested more than two hundred hours working for Emzini and selling solar energy solutions, including the time to get the three customers that he brought.

71. Emzini likely will have closed one or two or three of them by the time Mr. Barends and Emzini are served and appear.

72. Emzini has likely already closed one or two of them.

73. If Emzini has not closed all three sales, Emzini represented that they would close all three.

74. Emzini *should* have closed all three.

75. The Plaintiff asserts that his time is worth US $1000 per hour because that is what he was paid in his last consulting gig, which was in 2024.

76. The value of the Plaintiff's time, the amount of time he wasted, the number of sales actually closed all are facts that will be proven before and during the future jury trial to adjudicate these issues, including the precise amount now owed to the Plaintiff.

77. The Plaintiff has been left with no choice but to file this legal complaint, so that issues in the Parties' conflict can be adjudicated.


**Jury trial**

78. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights.  (Also, as per *Fed. R. Civ. P 38(b)*).

79. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

**Count I – Breach of Contract**

80. The Plaintiff realleges paragraphs 1-79 as if fully set out herein.

81. The Plaintiff entered into a valid, binding written contract with Defendant Emzini.

82. The Plaintiff performed, bringing three customers to Emzini.

83. Emzini has breached the contract by not paying for closed sales.

84. Conjunctively and alternatively, Emzini has breached the contract by not closing sales Emzini should have closed.

85. Emzini has also repudiated the contract. If Emzini did not close the sales, Emzini's repudiation of the contract has made performance impossible.

86. The Plaintiff has been damaged as a result of the Defendant's breaches by losing US $2,207,000 in base damages.

87. The Plaintiff has also lost time that he alleges is worth over US $200,000.

88. All allegations and the precise amount of damages shall be fully proven at jury trial.

**Count II – Negligence**

89. The Plaintiff realleges paragraphs 1-79 as if fully set out herein.

90. The Defendants had a duty to the Plaintiff, in that the Parties' binding contract set up an partnership arrangement in which they would share profits.

91. The Defendants breached their duties to the Plaintiff by not following up on promises, by refusing to further communicate, and by not paying the Plaintiff, among other acts and non-acts.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

92. If Emzini has truly not closed the three sales because the Plaintiff simply asked a question to Mr. Mel Barends about the timing of the closings and next steps, then Emzini has shirked its duties to the Plaintiff.

93. Regardless of the circumstances, the Plaintiff alleges that Emzini has shirked its duties to the Plaintiff.

94. The Plaintiff has been damaged as a result of the Defendant's negligence by losing US $2,207,000 in base damages.

95. The Plaintiff has also lost time that he invested that he alleges is worth over US $200,000.

96. All allegations and the precise amount of damages shall be fully proven at jury trial.

WHEREFORE, PLAINTIFF PRAYS:

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendant's breaches of contract;

(b) As to Count II for all direct and consequential damages caused by the Defendant's negligence, along with the imposition of exemplary damages to deter the Defendant from committing similar acts and non-acts of negligence in the future;

(c) For reasonable compensation for the value of his time in representing himself while he cannot afford an attorney (*quantum meruit*);

(d) For reasonable future attorney's and paralegal fees and costs including administrative, filing, service, Court reporter, jury fees, travel costs and for all other reasonable costs of this action and;

(e) For such other and further relief as this Court deems just and proper.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

RESPECTFULLY SUBMITTED

_____
Carl A. Wescott, *pro se*
April 14th, 2025

## **VERIFICATION**

I, Carl A. Wescott, under penalties provided by New Mexico law as well as the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT**

# EXHIBIT A
## ASSIGNMENT OF CAPITAL IDEAS CONSULTING, WLL CLAIMS

WHEREAS, CAPITAL IDEAS CONSULTING, WLL ("CAPITAL IDEAS"), is the owner of legal claims ("the claims") related to Emzini Africa Holdings Limited.

COMES NOW, CAPITAL IDEAS, that hereby sets forth and agrees as follows:

1. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CAPITAL IDEAS hereby assigns all legal right, title, and interest it may have in the claims, to Carl A. Wescott ("Wescott").

2. CAPITAL IDEAS waives all right, title, claim and interest in these legal claims, whatever it or they may be, to Wescott free and clear of any claims of itself.

3. Wescott shall have all legal rights and claim to the assigned legal claims. Wescott shall be afforded all legal rights and responsibilities pursuant to the legal claims as if he had personally done the deals that CAPITAL IDEAS did, and as if Wescott would have personally received the related revenues.

4. CAPITAL IDEAS makes no warranties or representations regarding the legal claims, and Wescott enters this Assignment after further review of the timeline and sequence of events.

5. Each party has had the opportunity to seek the guidance of an attorney of their own choosing in entering into this agreement.

6. In witness whereof, the Assignor CAPITAL IDEAS and the Assignee Carl Wescott have both executed this assignment on the April 13th, 2025 date set forth below. The assignment shall be effectuated when both parties have signed.

Assignor CAPITAL IDEAS
April 14th, 2025

Assignee Carl Wescott
April 14th, 2025

*EXHIBIT B*

# EMZINI AFRICA HOLDINGS SALES COMMISSION AGREEMENT
## Solar, Wind, Hydro, Gas

**THIS** *EMZINI AFRICA HOLDINGS SALES COMMISSION AGREEMENT* (this "Agreement") is made on the day that both Parties have signed.

BETWEEN

**EMZINI AFRICA HOLDINGS (PTY) LTD,** hereinafter referred to as **"EMZINI"** or "the Company", a South African company, which expression shall where the context so admits includes its agents, successors in title and assigns, of the first part;

AND

**CAPITAL IDEAS CONSULTING WLL,** hereinafter referred to as **"SALES AGENT",** a Bahrain limited liability company, which expression shall where the context so admits include its agents, successors in title and assigns, of the second part.

Each is a **"Party"** to this Agreement and they are referred to collectively as the **"Parties"**.

**WHEREAS:**

a) **SALES AGENT** is a boutique consultancy with decades of experience in marketing, sales and distribution.

b) **EMZINI** now retains, appoints, and engages **SALES AGENT** to aid with sales as an independent contractor to act as a sales representative for the

   (1) marketing and sales of country-level solar, wind, hydro, and gas products and services offered by the Company.
   (2) Marketing and sales of the commercial scenario for solar solutions in Africa: businesses that have paid their power bills for a year or more, that are currently on the grid, that wish to switch to solar power (Usually between 50 kw and 5 MW).
   (3) Any future product offered by Emzini, including solar mesh-grid energy solutions.

**NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:**

1. **Further Representations and Warranties**

   Each Party represents and warrants that it has full rights, power and authority to enter into this Agreement without the violation of any contractual, legal or other obligation.

   The terms and conditions shall constitute a binding and enforceable agreement between the Parties and their agents/successors-in-title.

1

2. **Responsibility of EMZINI**

**EMZINI** will answer all customer questions, participate in meetings with the customer after pre-qualification, and will provide documentation to its investors in the hopes that one of the investors funds the presented scenario. After that, Emzini, as EPC, will do the install, or we will all collaborate with another EPC to effectuate and install the contracted energy solution.

3. **Responsibility of SALES AGENT**

**SALES AGENT** will bring prospective customers to Emzini, pre-qualifying them.

**SALES AGENT** will hire salespeople under it, like the first one, Mr. Leslie Manhombo in Zimbabwe. **SALES AGENT** will manage the salespeople, pay the salespeople, and report back to Emzini on pre-qualified customers.

4. **Confidentiality**

**SALES AGENT** agrees to treat all non-public information obtained during the course of the engagement as confidential and shall not disclose it to any third party without Emzini's prior written consent.

5. **Non-Competition**

During the term of this Agreement and for a period of twelve (12) months after termination **SALES AGENT** agrees not to engage in any activity that competes with the sale of solar products and services offered by Emzini in South Africa including targeting Emzini's clients.

6. **Non-Circumvent**

**SALES AGENT** and **EMZINI** agree not to circumvent each other and their respective relationships. Thus, for all customers introduced to **EMZINI**, **SALES AGENT** will be compensated for successful sales/installations. If an introduced customer makes multiple energy solution purchases from Emzini, **SALES AGENT** shall be compensated for each one.

7. **Commission Structure**

**SALES AGENT** shall be entitled to receive commissions based on the following structure:
- 50% of the total net profit for Emzini, for each successful sale closed by **SALES AGENT**. Emzini has provided the rough rule of thumb commission payment numbers on some solar scenarios including at 5 MW, without and with batteries.
- Commissions payable upon completion of the delivery of the product or service, subject to receiving full payment from the client, will be paid to the agent only once the client confirms receipt of delivery and happiness with the product and service. Commissions are only payable on successfully completed projects and payments.

2

**SALES AGENT** shall be responsible for all its own expenses incurred in connection with the performance of sales and marketing activities, including but not limited to travel, accommodation, and communication costs.

8. **Amendment**

This Agreement can be amended by a written instrument executed by the Parties.

9. **Assignment**

Neither Party shall assign, sell or transfer, in any manner whatsoever, this Agreement or all or any of its rights hereunder, or agree to any such assignment, sale or transfer, without the prior written consent of the other Parties.

10. **Entire Agreement**

This Agreement constitutes the entire agreement between the Parties in relation to the subject matter of this Agreement. The terms were jointly discussed, negotiated, drafted and are now agreed. This Agreement supersedes all other agreements and undertakings (oral or written) hitherto exchanged by the Parties prior to the execution of this Agreement.

11. **Notices**

Any notice given under this Agreement may be in WhatsApp or email. For important notices, it is suggested to confirm delivery by recipient by email, phone, and/or text.

12. **Governing Law and Dispute Resolution**

This Agreement shall be governed by and construed in accordance with the laws of South Africa.

If there is a dispute, the parties will meet in person (or over video) to resolve the dispute.

If the dispute cannot be resolved via in-person meetings, then the wronged party may choose any jurisdiction/venue in South Africa or the United States for arbitration, mediation, or any other legal process, and the other party will cooperate with the chosen jurisdiction/venue.

IN WITNESS WHEREOF, the Parties hereby memorialize this Agreement.

**FOR: EMZINI**                          **FOR: SALES AGENT**


_Mel Barends_                            _Carl A. Wescott_

3

April 13th, 2025

Clerk of the Court
United States District Court
District of New Mexico
**Santiago E. Campos U.S. Courthouse**
106 S. Federal Place
Santa Fe, NM, 87501

Re: *Wescott versus Emzini Africa Holdings*


Dear Clerk:

I'd like to get your help in filing/docketing a new legal complaint,
*Wescott versus Emzini Africa Holdings*

I have enclosed:

- Civil cover sheet
- Two legal complaints
- Application to proceed *in forma pauperis*
- CM/ECF PRO SE NOTIFICATION FORM

I've also enclosed a SASE (Self-Addressed Stamped Envelope) for Priority Mail back to me, that you can use for the return of the endorsed complaint (*Wescott versus Emzini Africa Holding*s)

I'm hoping you can file/docket and then send me back whatever paperwork you'd like me to have, hopefully including at least one stamped legal complaint.

Once we have a case number please fill it in to the CM/ECF PRO SE NOTIFICATION if possible, thank you. I've filled the rest of the form out and signed it.

If I left anything out or made any mistakes would you kindly call me (or email), so I can send in whatever's missing?

Thanks so much. Sincerely


Carl A. Wescott (carlwescott2025@gmail.com)
+1 276 773 7377
8210 E. via de la Escuela
Scottsdale, AZ 85258

1





PRESS FIRMLY TO SEAL

**UNITED STATES POSTAL SERVICE ®** | **PRIORITY® MAIL**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

This package is made from post-consumer waste. Please recycle - again.

RECEIVED
UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO
APR 16 2025
MITCHELL R. ELFERS
CLERK

**FROM:**
CARL A. WESCOTT
8210 E. Via de
la escuela
Scottsdale Az 81258

**TO:**
Clerk of Court
US Courthouse
106 S. Federal Place
Santa Fe, NM
87501

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP



UNITED STATES POSTAL SERVICE ®
USPS TRACKING #
9114 9023 0722 4032 1832 54

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.